UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

RocketPower, Inc.,

Plaintiff,

v.

Strio Consulting, Inc.,

Defendant.

File No. 19-cv-01928 (ECT/BRT)

**OPINION AND ORDER**

---

Lisa R. Petersen, Cohne Kinghorn, Salt Lake City, UT; Courtland C. Merrill, Anthony Ostlund Baer & Louwagie, PA, Minneapolis, MN, for Plaintiff RocketPower, Inc.

Tyler P. Brimmer and Adina R. Florea, Fafinski Mark & Johnson P.A., Eden Prairie, MN, for Defendant Strio Consulting, Inc.

---

Before this business-tort case is done, it may fill every square on the civil procedure bingo card. It began life in California state court, was removed to federal court in the Northern District of California, and then was ordered transferred here by that court. Before actually transferring the case, that court also was presented with and denied as "a half-baked . . . tactical ploy" a motion seeking interlocutory appeal of the transfer order pursuant to 28 U.S.C. § 1292(b). ECF No. 32 at 2. Upon arrival here, this case was consolidated with a second case already pending in this District between the same parties "for all purposes, including discovery, motions, hearings, and trial." Order at 2 [ECF No. 44].

In lieu of answering in this case, Defendant Strio Consulting seeks dismissal of Plaintiff RocketPower's complaint on two grounds pursuant to Federal Rule of Civil Procedure 12(b)(6). First, Strio says that the federal district court that transferred this case

here decided already that RocketPower's claims fail to the extent they are based on California law. According to Strio, the law-of-the-case doctrine forbids another federal district court from revisiting that decision. Next, Strio argues that RocketPower's claims in this case must be dismissed because they may be asserted only as compulsory counterclaims in response to Strio's complaint in the companion case and not in a separate, parallel case. Strio's motion will be denied. The transferor court did not decide the merits of RocketPower's claims. Regarding Strio's second argument, the claims RocketPower asserts in this case are not compulsory counterclaims in the consolidated companion case. Even if they were, the law would not preclude RocketPower from asserting its claims in its own separate complaint under the circumstances presented here.

# I[1]

The basic facts leading to this dispute are easy to summarize. RocketPower and Strio worked together to provide a variety of worker-recruiting and related services to third-party businesses. RocketPower and Strio's relationship involved agreements of three types: an agreement between RocketPower and Strio; agreements between RocketPower and Strio on one side and workers on the other ("Worker Agreements"); and agreements between RocketPower and third-party businesses. In this case, RocketPower alleges essentially that Strio interfered with RocketPower's contractual relationships with third-

[1] In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Therefore, the background facts described in Part I of this Opinion and Order are taken from RocketPower's amended complaint. Am. Compl. [ECF No. 1 at 30–49].

party businesses and "its ability to place talented individuals with" these businesses. Am. Compl. ¶ 137 [ECF No. 1 at 30–49]. In the consolidated companion case, Strio is the plaintiff and alleges that RocketPower failed to pay Strio in line with their agreement. *See generally Strio Consulting, Inc. v. RocketPower, Inc.*, No. 19-cv-1048, Compl. [ECF No. 1]. As with most cases at this early stage, describing the Parties' allegations in greater detail prompts questions the pleadings do not answer, but some details are necessary to resolving Strio's Rule 12(b)(6) motion.[2]

RocketPower "provides talent solutions to rapidly growing companies," and Strio "is a consulting business that provides back office services for RocketPower." Am. Compl. ¶¶ 5–6. Businesses "contract with RocketPower for assistance with finding and hiring, placement, management, and supervision of workers[.]" *Id.* ¶ 8. The Parties have a verbal agreement to work together to provide services to RocketPower's clients. *Id.* ¶ 9. Pursuant to this agreement, when a RocketPower client requests assistance in finding and hiring a worker, RocketPower advertises the position and begins soliciting qualified candidates to apply. *Id.* ¶ 12. Jointly, RocketPower and Strio then screen and extend job offers to applicants. *Id.* ¶¶ 13–15. Applicants who accept offers sign a Worker Agreement, and

---

2 There is subject-matter jurisdiction over this case under the diversity statute, 28 U.S.C. § 1332. RocketPower is incorporated under Delaware law and maintains its principal place of business in San Francisco, California. Am. Compl. ¶ 2. Strio is incorporated under Minnesota law and maintains its principal place of business in Lake Elmo, Minnesota. *Id.* ¶ 3. As noted, RocketPower filed this action originally in California state court, and Strio removed the case. In this situation, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Strio's notice of removal plausibly alleges an amount in controversy greater than $75,000. Not. of Removal ¶ 17 [ECF No. 1 at 4].

Strio drafted the Worker Agreements at issue here. *Id.* ¶ 15. Some of these Strio-drafted Worker Agreements reference both RocketPower and Strio as the employer; others refer only to Strio as the employer. *Id.* ¶ 38. Whether the Worker Agreements reference RocketPower or not, RocketPower alleges that all workers hired as a result of this joint RocketPower/Strio process were joint employees of RocketPower and Strio due to their shared control of the worker. *Id.* ¶ 19. In no case would a hired individual become an employee of RocketPower's client, at least not right away. *See id.* ¶ 16.

RocketPower's complaint in this case focuses on the Strio-drafted Worker Agreements, *see generally id.* ¶¶ 100–144, and two in particular: one signed by Paula-Anne Sherron on July 10, 2018, and one signed by Christine Covert on January 29, 2018. *Id.* ¶¶ 62–99. Both the Sherron and Covert Worker Agreements reference only Strio as the employer, and both agreements contain identical non-competition provisions. *See* Decl. of Mathew Caldwell, Ex. D at 5–6, Ex. E at 5 [ECF No. 11-3]. In full, the non-competition clause in each agreement reads as follows:

> Non-Competition. During the term of this Agreement and for one year after the termination of Consultant's employment relationship with Strio for whatever reason, whether such termination was by Strio or Consultant, and whether with or without cause, Consultant agrees that he or she shall not, as a principal, employer, stockholder, partner, agent, consultant, independent contractor, employee or in any other individual representative capacity:
>
> 1) Provide or attempt to provide directly or indirectly, or advise others of the opportunity to provide, any Services to any Client:
>
>     a. To which, within six (6) months prior to termination of Consultant's employment, Consultant has provided services in any capacity on behalf of Strio, or

b. To which, within ninety (90) days prior to such termination of Consultant's employment, Consultant has been introduced or about which Consultant has received information through Strio or through any Client for which Consultant has performed Services in any capacity on behalf of Strio or;

2) Retain or attempt to retain, directly or indirectly, for Consultant or any other party, the Services of any person, including any of Strio's employees, who was providing services to or on behalf of Strio within ninety (90) day [sic] before the termination of Consultant's employment, and to whom Consultant has been introduced or about which Consultant has performed Services in any capacity on behalf of Strio. For purposes of this paragraph, the term "Client" includes any affiliates, customers and clients of Strio's Clients for which Consultant performed
3) or was assigned to perform Services under this Agreement.

*Id.*; Am. Compl. ¶ 42. Both the Sherron and Covert Worker Agreements also included a "Choice of Law/Forum Selection and Consent to Personal Jurisdiction" provision. *Id.* ¶¶ 45–47. That provisions reads:

> Choice of Law/Forum Selection and Consent to Personal Jurisdiction. This Agreement shall be governed, construed and determined according to the laws of the State of Minnesota without reference to principles of conflicts of law. Any claims for specific performance or injunctive relief relating to or arising out of this Agreement shall be heard solely in Hennepin County District Court in the State of Minnesota. Consultant and Strio consent to the exclusive jurisdiction of Hennepin County District Court for such claims. It shall be a violation of this Agreement for Employee or Strio to bring any action in any other court if that action relates to or arises out of this Agreement in any manner.

Decl. of Mathew Caldwell, Ex. D at 6, Ex. E at 6.

It is not clear when, but sometime after signing their agreements, Sherron and Covert each obtained employment directly with the RocketPower client with whom they were working while employed by RocketPower and Strio. *Id.* ¶¶ 80, 86. At least with respect to Sherron, the RocketPower client, Minted, requested and was given permission by RocketPower to employ her. *Id.* ¶¶ 80–81. Sherron and Covert's employment with RocketPower's clients seems to have set off the Parties' dispute.

Pre-suit correspondence between RocketPower and Strio describes the beginnings of their dispute. In a letter to Strio dated April 17, 2019, RocketPower described recently learning from one of its clients that Strio had contacted that client directly and represented that the individual workers provided to that client by RocketPower were, in fact, Strio employees. *Id.* ¶ 89. According to RocketPower, its client did not know who Strio was and did not know that Strio and RocketPower had any working relationship. *Id.* In its letter, RocketPower demanded that Strio not contact RocketPower's clients directly without first obtaining permission from RocketPower. *Id.* ¶ 90. RocketPower also asserted that Strio's direct contact with RocketPower's clients "interfered with RocketPower's contractual relationships." *Id.* ¶ 91. In response to RocketPower's letter, Strio threatened litigation based on its assertion that, by permitting Sherron and Covert to accept employment with RocketPower's clients, RocketPower "solicit[ed], encourage[d], or entice[d] Strio employees to . . . breach their contracts." *Id.* ¶ 93. In a letter to Minted dated April 22, 2019, Strio threatened legal action "based on Ms. Sherron's alleged breach of the Sherron [Worker] Agreement." *Id.* ¶¶ 73, 77. Strio's letter to Minted included "negative and disparaging comments about RocketPower's CEO, Mat Caldwell, and

misrepresented the nature of Ms. Sherron's relationship with both Strio and RocketPower." *Id.* ¶ 78. In its letter to Minted, Strio asserted that RocketPower lacked authority to approve a waiver of the non-competition clause in Sherron's Worker Agreement because it was not a party to the agreement. *Id.* ¶ 82. In another letter to Covert dated the same day (April 22), Strio "indicat[ed] that she had breached her Agreement with Strio" by accepting employment with a RocketPower client. *Id.* ¶¶ 84, 86. In that letter, Strio "threatened [Covert] with legal action for providing services [RocketPower alleges] she was contractually entitled to perform." *Id.* ¶ 87.

RocketPower's claims in this case concern its relationships with employees and the Worker Agreements, and its relationships with its clients. RocketPower's first cause of action seeks a declaratory judgment that "the restrictive covenant and choice of law provisions of the Worker Agreements are invalid and unenforceable [under California law] with regard to RocketPower and the joint workers of RocketPower and Strio." *Id.* ¶ 108. Next, RocketPower asserts that Strio intentionally interfered with its contractual relations with clients by "defaming and disparaging Mat Caldwell, CEO of RocketPower, and misrepresenting the status of the workers as exclusive employees of Strio, rather than what they truly are, joint employees of both RocketPower and Strio." *Id.* ¶ 112. For its third cause of action, RocketPower asserts that the same conduct underlying its intentional-interference claim constituted negligent interference with prospective economic advantage. *Id.* ¶¶ 118–28. Fourth, RocketPower asserts that Strio, by including non-competition clauses and forum-selection clauses, which are void under California law, violated § 16600 of the California Business and Professions Code, which itself constitutes unfair

competition in violation of § 17200 of the California Business and Professions Code. *Id.* ¶¶ 129–39. Finally, RocketPower requests injunctive relief restricting Strio "from misrepresenting the status of the workers' relationship with RocketPower, from disparaging and defaming Mat Caldwell, CEO of RocketPower, and from contacting RocketPower clients and joint employees seeking to solicit signatures on agreements containing unenforceable restrictive covenants." *Id.* ¶ 140.

RocketPower filed this case in California state court on April 30, 2019. Not. of Removal Ex. A at 2 [ECF No. 1 at 8]. Strio removed the case to the United States District Court for the Northern District of California on May 24. Not. of Removal at 5. Six days later, on May 30, Strio filed in that court a motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer venue. ECF No. 8. Judge William H. Alsup granted Strio's motion to transfer this case here on July 17. ECF No. 26. At the same time, Judge Alsup denied as moot Strio's motion to dismiss for lack of personal jurisdiction. *Id.*; ECF No. 27. The following day, RocketPower filed a motion seeking certification of the transfer order for interlocutory appeal to the Ninth Circuit. ECF No. 28. Judge Alsup promptly denied that motion and two related motions RocketPower had filed on July 22, calling them a "half-baked . . . tactical ploy to further delay resolution of this litigation." Appeal Order at 2 [ECF No. 32]. This case was transferred electronically to this District the same day. Before RocketPower brought this case, Strio filed its case in this District on April 17, 2019. No. 19-cv-1048, ECF No. 1. On August 7, the Parties filed a stipulation and joint motion to consolidate the cases in this District. Joint Stip. [ECF No. 42]. The

motion was granted, and on August 8 the two cases were consolidated "for all purposes, including discovery, motions, hearings, and trial." Order at 2 [ECF No. 44].

II

A

RocketPower argues that Strio's Rule 12(b)(6) motion to dismiss should be denied "because it already filed a motion under Federal Rule of Civil Procedure 12 in this case." Mem. in Opp'n at 25. The law ordinarily forbids successive Rule 12 motions. Rule 12(g)(2) says: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The two exceptions do not apply here. Rule 12(h)(2) provides that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2). Rule 12(c) permits motions for judgment on the pleadings, but only "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). This exception does not apply because pleadings here have not yet closed—Strio has not answered. A party may file a successive Rule 12(b) motion to assert a subject-matter-jurisdiction defense, Fed. R. Civ. P. 12(h)(3), but Strio's motion asserts no such defense. The Rule 12(b)(6) motion Strio makes here was available to Strio when it filed its Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction in the Northern District of California. Strio advances no argument in support of its Rule 12(b)(6) motion here based on facts or legal developments occurring after it filed its Rule 12(b)(2) motion there. Indeed, Strio advanced arguments in support of its transfer motion there that are identical to the

arguments it advances here. *See* Mot. to Transfer at 20–21 ("[T]he issues raised in RocketPower's Complaint greatly overlap with those raised in Strio's Minnesota action . . . . [T]he Agreements between RocketPower, Strio, and the employees are substantially intertwined with the profit-sharing agreement between RocketPower and Strio."). For all of these reasons then, Strio's Rule 12(b)(6) motion is a successive motion "under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).

Though that legal conclusion would justify denying Strio's Rule 12(b)(6) motion without considering its merits, practical considerations serving "the just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1, counsel here against a rigid application of Rule 12(g)(2). Denying Strio's motion without considering its merits would mean Strio must answer. Once Strio has done that, the pleadings will be closed, and Strio would be free—under the exception provided in Rule 12(h)(2)—to file a motion for judgment on the pleadings raising the same issues it raises in its Rule 12(b)(6) motion here. As a practical matter then, denying Strio's motion on the basis of Rule 12(g)(2) probably would just delay consideration of the same issues Strio raises now. Also, Strio's Rule 12(b)(6) motion does not defy Rule 12(g)(2)'s purposes of preventing dilatory motion practice and delay. In view of Judge Alsup's transfer order, this is the first time Strio's Rule 12(b) arguments will be considered. In other words, though Strio's motion violates the letter of Rule 12(g)(2), it does not violate the spirit of that rule because the motion represents no stalling tactic and risks no delay.

B

Strio says Judge Alsup already decided that RocketPower fails to state claims under California law. Specifically, Strio argues that when he determined that the forum-selection clause in the Worker Agreements was enforceable and required transfer of this case to this District, Judge Alsup also determined that the Minnesota choice-of-law clause in the same provision in the Agreements also applied. Strio argues that this ruling is now "law of the case" and cannot be revisited. Mem. in Supp. at 13. Therefore, Strio asserts, RocketPower's claims in this case must be dismissed insofar as they rest on California law. *Id.* at 9–11, 13–16.

Judge Alsup did not decide that RocketPower's claims under California law fail. He didn't say that explicitly. Judge Alsup's transfer order is clear: "This order grants defendant's motion to transfer. The forum-selection clause in the agreements executed between Strio and its contractors/employees is enforceable and binding on interested parties to the agreements, namely RocketPower." Order at 3. Nowhere in his order did Judge Alsup express a determination that transfer was justified because Minnesota (and not California) law would govern RocketPower's claims. Nor did Judge Alsup make that determination implicitly. It is true that the forum-selection clause is one part of a longer provision in the Worker Agreements titled "Choice of Law/Forum Selection and Consent to Personal Jurisdiction." Decl. of Mathew Caldwell Ex. D at 6, Ex. E at 6. As the title suggests, the provision includes a forum-selection clause and a choice-of-law clause. It also is true that the two grounds underlying Judge Alsup's determination that RocketPower was bound by the forum-selection clause might—if the Agreements said nothing more

about choice of law—also support a determination that RocketPower is bound by a Minnesota choice-of-law clause in the same paragraph. To recap, Judge Alsup first applied Ninth Circuit precedent analyzing forum-selection clauses under 28 U.S.C. § 1404(a) and determined that RocketPower was bound by the clause though it was not a party to those agreements:

> The recruits' relationship with non-signatory RocketPower arose out of [] these agreements executed with Strio. Some of the agreements . . . mentioned RocketPower by name. RocketPower therefore surely knew that the very clause saying it too would litigate in Minnesota was in the written agreement imposed on some of its employees and contractors. Yet, even if RocketPower did not know, RocketPower reaped profits from this arrangement, and so it should have known that it had foisted this forum on scores of recruits. Accordingly, fairness requires that RocketPower take some of the same Minnesota medicine it had helped force down the throat of the employees. When the employees became bound to litigate in Minnesota, RocketPower did as well.

Order at 7. If the Agreement said nothing further, the same could be said with respect to the Minnesota choice-of-law clause. Second, Judge Alsup rejected RocketPower's argument that the forum-selection clause should not bind it to litigate in Minnesota because California Labor Code § 925 "makes forum-selection clauses voidable per public policy." *Id.* Judge Alsup determined that RocketPower could not rely on § 925 to void the forum-selection clause because that section makes forum-selection clauses "voidable at the request of the employee," and RocketPower was not an employee of Strio. *Id.* (emphasis omitted). Section 925 establishes the same employee-voidability rule regarding choice-of-law clauses, so again, if the Agreements said nothing further, Judge Alsup's analysis could be applied to the Worker Agreements' choice-of-law clause. But the Agreements do say

something further on the choice-of-law question. As Judge Alsup noted, the Worker Agreements "also stated that the agreement 'will be governed by the law of the state in which the [s]ervices are primarily performed.'" Order at 2 (alteration in original); *see* Caldwell Decl. Ex. D at 7 and Ex. E at 7. This provision at least apparently conflicts with the Minnesota choice-of-law clause because, as everyone seems to agree, the "state in which the [s]ervices are primarily performed" under the Agreements is California. *See* Am. Compl. ¶ 70 ("Both Ms. Sherron and Ms. Covert work in California"); Mem. in Supp. at 7 [ECF No. 50] ("Both [Sherron and Covert] worked in California for two RocketPower California clients."). The reasoning that justified transfer of this case to this District does not address, much more resolve, this apparent conflict. Because the transfer order does not address this question, the issue is not settled, and the law-of-the-case doctrine does not apply. *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995) ("The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.")[3]

---

[3] Even if it applied, the law-of-the-case doctrine is not so inflexible as Strio seems to suggest. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions," and "[f]ederal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). Practical reasons justify giving transfer orders greater weight under the law-of-the-case doctrine: if a transferee court were free to revisit or disregard a transfer order, litigants might face the risk of being volleyed between different jurisdictions in something of an Article III contest of wills, at least delaying consideration of a suit's merits. *Id.* ("[T]ransferee courts that feel entirely free to revisit transfer decisions . . . threaten to send litigants into a vicious circle of litigation."). Absent

C

Strio next argues in support of its Rule 12(b)(6) motion that RocketPower's claims in this case may only be brought as compulsory counterclaims in the companion case brought by Strio. Mem. in Supp. at 18. Strio argues that RocketPower's claims in this case are logically related to Strio's claims in its original complaint in the companion case because "[b]oth cases involve the same parties, revolve around the same business relationship, and involve the same work performed by the employees and contractors who signed the Personnel Agreements." Mem. in Supp. at 19.

If RocketPower's claims in this case are compulsory counterclaims in the companion case, Rule 12(b)(6) dismissal of this case is not the proper result. "The purpose of [Rule 13] is to prevent the fragmentation of litigation, multiplicity of actions and to conserve judicial resources." *Provident Life & Accident Ins. Co. v. United States*, 740 F. Supp. 492, 496 (E.D. Tenn. 1990). In situations "[w]here one party does not file a compulsory counterclaim in a pending action, but, instead, files a second action based on that claim in another court," courts in multiple districts have declined to dismiss the second

---

these or similar concerns, however, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance[.]" *Id.* at 817; *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997) ("The doctrine of the 'law of the case' is a discretionary tool permitting a district court to effectively manage the legal issues arising during litigation. It does not deprive the district court of the ability to reconsider earlier rulings." (internal citation omitted)). As noted, the choice-of-law question in this case does not seem capable of resolution without accounting for the two competing clauses described above. Therefore, the law-of-the-case doctrine would not bar reconsideration of a hypothetical order determining that the Minnesota choice-of-law clause applies without accounting for the separate clause stating that the Agreements "will be governed by the law of the state in which the [s]ervices are primarily performed."

action if it had been consolidated with the first. *Id.*; *see also Wells Fargo Bank, N.A. v. Collins*, 3:11-CV-2339-L-BK, 2012 WL 13034048, at *2 (N.D. Tex. May 2, 2012); *Capital Sols., LLC v. Konica Minolta Bus. Sols. USA, Inc.*, Nos. 08-2027-JWL, 08-2191-JWL, 2008 WL 3538968, at *7 (D. Kan. Aug. 11, 2008); *Jack LaLanne Fitness Ctrs., Inc. v. Jimlar, Inc.*, 884 F. Supp. 162, 164 (D.N.J. 1995); *Branch v. FDIC*, 825 F. Supp. 384, 400–01 (D. Mass. 1993). In each of these cases, the court determined, essentially, that "consolidation obviates the concerns of Rule 13(a), thereby making dismissal inappropriate." *Jack LaLanne*, 884 F. Supp. at 164. This only makes practical sense.[4]

Even if practicality didn't matter—and Rule 1 instructs that it does—RocketPower's claims in this case are not compulsory counterclaims in the companion case. Rule 13(a) of the Federal Rules of Civil Procedure provides, in relevant part:

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1). The Eighth Circuit has identified four "varying tests for determining whether the claim in question arose out of the same transaction or occurrence, within the meaning of Rule 13(a)." *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir. 1979), *cert. denied*, 442 U.S. 921 (1979). These tests are:

---

[4] For these same reasons, even if RocketPower's claims in this case are compulsory counterclaims that must be asserted in response to the amended complaint Strio filed in the companion case on October 4, dismissal of this case is not the proper result. *See* No. 19-cv-1048, Strio Am. Compl. ECF No. 48.

> whether the issues of fact and law raised by the claim and counterclaim are largely the same, whether res judicata would bar a subsequent suit on the defendant's claim, whether the evidence to support or refute the counterclaims would be substantially the same as the plaintiff's claim, and whether there is a logical relation between the claim and counterclaim.

*Mille Lacs Band of Chippewa Indians v. State of Minn.*, 853 F. Supp. 1118, 1146 (D. Minn. 1994) (citing *Cochrane*, 596 F.2d at 265). In analyzing Rule 13(a), the Eighth Circuit has "agree[d] with the majority of the federal courts that the logical relation test provides the needed flexibility for applying Rule 13(a)[.]" *Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir. 1990). "Basically, [the logical-relation test] allows the court to apply Rule 13(a) to any counterclaim that from an economy or efficiency perspective could be profitably tried with the main claim." 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1410 (3d ed. 2019).

A close review shows that RocketPower's claims in this case do not arise out of the same transaction or occurrence as Strio's claims in the companion case. Strio's original complaint in the companion case focuses on the contractual relationship between Strio and RocketPower. Strio alleges that in 2017, it and RocketPower entered into a contract to share costs and profits "whereby Strio would assign its employees to fill personnel needs for Rocket Power as part of its work with various clients[.]" No. 19-cv-1048, Compl. ¶ 10–12. Strio alleges this contract provided that it and RocketPower "would share equally in the cost of Strio providing its employees' services to Rocket Power's customers, including payroll expenses, on an ongoing basis and the parties would equally split any profits derived from projects staffed by Strio's employees." *Id.* ¶ 13. Regardless whether

RocketPower was able to collect from its clients, RocketPower "was required to pay its half of the costs of Strio providing labor." *Id.* ¶ 14. When RocketPower was paid by its clients, it was required to pay Strio one-half of all profits earned on the project. *Id.* Strio alleges that, despite collecting "millions in revenue from its clients," RocketPower "failed to timely pay to Strio its portion of the cost or distribute any profits earned through its activities" and "failed and otherwise refused to pay its half of the cost of providing labor to staff the projects . . ., forcing Strio to pay the entirety of its payroll expenses despite receiving little or no payments from Rocket Power[.]" *Id.* ¶¶ 21–22. "Upon information and belief," Strio alleges that RocketPower "wrongfully withheld and diverted funds rightfully belonging to Strio." *Id.* ¶ 23. Therefore, Strio alleges, "Strio is currently owed $1,169,238.12 by Rocket Power, in addition to Rocket Power's half of ongoing payroll expenses." *Id.* ¶ 24. Strio asserts three causes of action stemming from these allegations in its original complaint: (1) breach of contract; (2) unjust enrichment; and (3) civil theft and conversion. *Id.* ¶¶ 27–39. Each of these claims arises directly out of the relationship between RocketPower and Strio and is premised on Strio's allegation that "RocketPower and [RocketPower's CEO] Caldwell have wrongfully withheld and diverted funds rightfully belonging to Strio for their own personal and business use[.]" Strio Compl. ¶ 23.

In contrast to Strio's claims, RocketPower's claims here concern essentially the Worker Agreements and RocketPower's contracts with its clients, not its contract with Strio. RocketPower first requests a declaration that "the restrictive covenant and choice of law provisions of the Worker Agreements are invalid and unenforceable with regard to RocketPower and the joint workers of RocketPower and Strio." Am. Compl. ¶ 108.

Without the contract that is the subject of Strio's suit, RocketPower and Strio obviously would not have worked together. But the transaction or occurrence that gives rise to RocketPower's request for declaratory relief does not concern the RocketPower/Strio contract. That request arises from the Worker Agreements, particularly their non-competition clauses, and their validity under applicable law. Nor do RocketPower's intentional-interference and negligent-interference claims stem from the RocketPower/Strio contract. Instead, these claims arise out of RocketPower's allegations that Strio interfered with RocketPower's contractual and economic relationships with RocketPower's clients. Specifically, RocketPower alleges Strio contacted RocketPower's clients, "defam[ed] and disparage[ed] Mat Caldwell, . . . and misrepresent[ed] the status of the workers as exclusive employees of Strio[.]" RocketPower Am. Compl. ¶¶ 112, 122. RocketPower's unfair-competition claim, like its request for declaratory relief, stems from Strio's use of non-competition clauses in the Worker Agreements. *See Id.* ¶ 129–39. It is true that RocketPower and Strio's claims share a starting point: RocketPower and Strio have claims against each other only because they decided to work together under their contract. But sharing an underlying, but-for cause is not enough to compel the conclusion that two cases arise out of the same transaction or occurrence within the meaning of Rule 13(a).

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant's Motion to Dismiss [ECF No. 48] is **DENIED**.

Dated: October 29, 2019

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court